[No. A040251. First Dist., Div. Two. May 25, 1989.]

PARKMERCED RESIDENTS ORGANIZATION et al., Plaintiffs and Respondents, v.
SAN FRANCISCO RESIDENTIAL RENT STABILIZATION AND ARBITRATION BOARD, Defendant and Respondent;
PARKMERCED COMPANY, Real Party in Interest and Appellant.

**COUNSEL**

Richard J. Kilmartin and Knight, Boland & Riordan for Real Party in Interest and Appellant.

William M. Robinson and Robert J. Sheppard for Plaintiffs and Respondents.

Louise H. Renne, City Attorney, Thomas J. Owen and Kathryn A. Pennypacker, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

BENSON, J.—This is an appeal by Parkmerced Company (Parkmerced), real party in interest in the trial court, from a judgment of the superior court granting a second petition for peremptory writ of mandate directed to the San Francisco Residential Rent Stabilization and Arbitration Board (the Rent Board). This second writ commanded the Rent Board to set aside its amended decision, permitted it to reopen the hearing for further proceedings before the Rent Board, and ordered the Rent Board to issue a new decision containing findings in support of its new decision. We reverse the judgment.

### STATEMENT OF THE CASE

This case involves the San Francisco Residential Rent Stabilization and Arbitration Ordinance (the ordinance) and the rules and regulations (rules) of the Rent Board created by the ordinance. Parkmerced Residents Organization and seven individual tenants of Parkmerced (the tenants) filed a petition under Code of Civil Procedure section 1094.5 seeking a writ directing the Rent Board to set aside its amended decision permitting Parkmerced to continue to use a method of calculating utility pass-throughs different from the current rule, allowing the Rent Board to reopen the hearing for further proceedings and ordering the Rent Board to enter new findings of fact supporting its decision. Both the Rent Board and Parkmerced opposed the petition.

On appeal, Parkmerced claims the trial court erred in allowing the Rent Board to reopen the hearings since a prior request had been denied in a final judgment and the doctrine of res judicata bars relitigation of the issue. Parkmerced also claims rule 4.11(b) issued by the Rent Board is invalid since it conflicts with the ordinance and, in addition, that the findings of fact made by the Rent Board to support its original decision were sufficient as a matter of law.

### STATEMENT OF FACTS

Parkmerced is the owner of a residential complex in San Francisco consisting of 3,483 apartment units. The Rent Board is the agency responsible

for interpreting and administering the San Francisco rent ordinance. The ordinance was adopted on June 12, 1979. Since its adoption, the ordinance has consistently provided that landlords who pay their tenants' utilities may pass through to their tenants the increased costs of utilities in addition to annual rent increases.[1]

In the summer of 1981, Parkmerced noticed a 7 percent increase in rent to its tenants, as well as an increase based upon increased utility costs. The tenants were notified the pass-through would be calculated by comparing utility costs on May 31, 1979, with the average monthly utility costs for the period June 1979 through May 1980. Certain tenants petitioned the Rent Board for a hearing concerning the increases; hearings were held before Hearing Officer Lilienthal in September and December 1981.

Lilienthal found the requested pass-through for increases in utility costs amounted to $461,987.80 based upon comparison with the 1979-1980 base period. Lilienthal disallowed any pass-through for utility costs associated with common areas such as administrative and service buildings and laundry rooms and directed Parkmerced to determine a reasonable and justifiable method to segregate out the common-area utility increase.

No appeal was taken from Lilienthal's decision which was rendered on February 22, 1982. The decision was predicated on rule 1.22, the Rent Board rule in effect at the time the pass-throughs were noticed. Rule 1.22 allowed the landlord to calculate the utility pass-through by comparing cost on the calculation date with the average monthly utility cost for a comparison period of six months or more chosen by the landlord beginning on or after May 13, 1979.

On October 19, 1981, the Rent Board substantially amended rule 1.22. The new rule mandated that calendar year 1980 was the base year for future utility increase comparisons. Lilienthal noted this change in the rule in his February 22, 1982, decision but applied the earlier rule in effect at the time that the pass-throughs were noticed to the tenants. Subsection (g) of rule 1.22 provided: "If the method set forth for calculation of an increase (or decrease) in utilities . . . cannot be applied for reasons beyond the control of the landlord, and in the absence of a relevant agreement between the

---

[1] Ordinance section 37.2(o) defines "rent increases" as "Any additional monies demanded or paid for rent as defined in item (n) above, or any reduction in housing services without a corresponding reduction in the monies demanded or paid for rent; provided, however, that where the landlord has been paying the tenant's utilities and cost of those utilities increase, the landlord's passing through to the tenant of such increased costs does not constitute a rent increase."

landlord and the tenant, the landlord may petition the Board for an arbitration hearing to establish an appropriate alternative method." On April 1, 1982, the Rent Board renumbered rule 1.22 as rule 4.11. Subsection (g) was relettered (f). No other changes were made.

On May 21, 1982, Parkmerced's counsel wrote a letter to the Rent Board requesting a waiver of rule 4.11(b),[2] which, as amended in October 1981, now mandated 1980 as the base comparison year. Counsel argued rule 4.11(b) was invalid because it prevented landlords from passing though utility increases occurring prior to January 1980. Counsel claimed the application of rule 4.11(b) would deprive Parkmerced of more that $200,000 in pass-throughs and would result in discriminatory treatment of its tenants since approximately half of them would be paying a substantially larger utility pass-through. The letter sought a waiver pursuant to rule 2.18 which provides the "the Board may grant exceptions to these Regulations for good cause shown in the interest of justice and to prevent hardship." The Rent Board did not respond to the letter.

On May 28, 1982, Parkmerced wrote to its tenants explaining its new calculations for utilities and making other adjustments pursuant to the February 22, 1982, Lilienthal decision. In the summer of 1983, Parkmerced noticed a 7 percent increase plus an additional increase for utility costs. Between November 18, 1983, and December 2, 1983, seven tenants filed petitions for hearing with the Rent Board contesting the utility pass-through. A series of six hearings was held between December 15, 1983, and February 29, 1984.

Hearing Officer Hestor rendered her decision on July 24, 1984. Hestor's decision ordered Parkmerced to recompute the pass-throughs according to rule 4.11(b) requiring the comparison of calendar years, to supply the resulting calculations to the tenants, and to refund amounts exceeding the calculations. Hestor's findings acknowledged Parkmerced's May 21, 1982,

---

[2]Subsection (b) of rule 4.11 provided: "Where a landlord pays utilities and seeks to pass-through to the tenant an increase based on increased cost of those utilities, the landord shall calculate the amount of such increase using the following method [¶] 1) Calculate the sum of utility cost for the twelve PG&E bills received in calendar year 1981. This sum will be referred to as 'total current utilities.'

"2) Calculate the sum of utility cost for the twelve PG&E bills received in calendar 1980. This sum will be referred to as 'total comparison utilities.'

"3) Subtract total comparison utilities from total current utilities and divide the result by 12 to determine the average monthly utility increase (or decrease) for the entire building.

"4) Multiply the per-room monthly increase (or decrease) by the number of rooms in each tenant's unit: single rooms without kitchens count as one (1) room units; studios are two (2) room units; one (1) bedroom without a separate dining room are three (3) room units; and so on."

letter to the Rent Board but noted she had no authority to waive the application of rule 4.11(b).

On August 13, 1984, Parkmerced appealed the Hestor decision to the Rent Board disputing, among other things, the application of rule 4.11(b). Parkmerced summarized its argument: "The ordinance provides that a landlord may pass through increased utility charges occurring after June 12, 1979. The Rule [4.11(b)] provides that only such increases occurring after January 1, 1981, may be passed on. The Rule is invalid." In a footnote at the end of this memorandum, Parkmerced's counsel stated its position had been previously communicated to the board by letter dated May 21, 1982, and referred the board to exhibit 10 of the record.

The Rent Board held a hearing on November 13, 1984, and rendered its decision on December 4, 1984. The board decided to waive rule 4.11(b) and to allow Parkmerced to continue using the noncalendar-year comparison periods to calculate its utility pass-throughs.

On March 26, 1985, the tenants filed a petition for writ of mandate (S.F. Super. Ct. No. 837626) challenging the Rent Board's December 4, 1984, decision with respect to the utility pass-through issue and seeking a further administrative hearing on the Rent Board's waiver of rule 4.11(b). The tenants also sought an order that the Rent Board make findings with respect to its decision waiving rule 4.11(b).

On July 11, 1985, the court granted this first petition for writ of mandate and ordered the Rent Board to enter findings in support of its decision, including the waiver of rule 4.11(b). The order also provided "The Court declines Real Party in Interest, PARKMERCED COMPANY' s suggestion that future litigation be avoided by declaring rule 4.11(b) of the RESIDENTIAL RENT STABILIZATION AND ARBITRATION BOARD invalid. As the matter currently stands, Real Party in Interest is not subject to the Rule since the [Board] created an exception to their Rule for the benefit of Real Party in Interest. The Court also declines Petitioner's request that the court order the [Board] to reopen its hearings on the exception to Rule 4.11(b) that it created for Real Party in Interest. Although extensive hearings were held upon this issue before the [Board], Petitioners have failed to supply the court with this administrative record. Absent the record, this Court will not presume that the hearing below was inadequate."

The peremptory writ issued on October 7, 1985. The Rent Board rendered an "Amended Decision on Appeal on Remand from Superior Court

in Response to the Preemptory Writ Issued October 7, 1985 Superior Ct. No. 837626" on November 6, 1985 (the amended decision).

On August 2, 1986, the tenants filed their second petition for writ of mandate (S.F. Super. Ct. No. 864160) challenging the Rent Board's amended decision. The court's August 31, 1987, statement of decision found the amended decision did not contain sufficient findings in support of the Rent Board's decision granting the waiver of rule 4.11(b) to Parkmerced. In response to the tenants' request that the court order the administrative hearings reopened since the administrative record did not contain substantial evidence to support the decision to grant an exception to rule 4.11(b), the court determined "the state of the administrative record does not require that the hearing be reopened" but allowed the Rent Board discretion to reopen the proceedings with regard to the waiver of rule 4.11(b). The Rent Board's return to the peremptory writ informed the court that on September 15, 1987, the Rent Board had set aside its amended decision with respect to the waiver of rule 4.11(b) and had set the matter for further hearing on that issue. Parkmerced filed its notice of appeal on October 26, 1987.

## DISCUSSION

*Whether the Rent Board's Amended Decision Contained Sufficient Findings of Fact*

We turn first to this issue since we find it dispositive of the appeal and our determination of this issue moots the remaining contentions of Parkmerced. The trial court found "the Amended Decision on Appeal does not contain sufficient findings in support of its decision to allow real party in interest Parkmerced Corporation [*sic*] an exception to Rule 4.11 of the Rent Board's rules and regulations to permit real party to continue using the June 1979 through May 1980 comparison period for utility pass throughs, rather than the calendar year 1980 comparison period required by Rule 4.11."

The amended decision of the Rent board contains the following findings of fact with regard to this issue: "2. During 1981, landlord attempted to pass-through PG&E cost increases, using June 1, 1979 to May 31, 1980 as its base year.

"a) Tenants protested the pass-through and extensive hearings were consequently held in 1981-1982.

"b) At the conclusion of the hearings, the Hearing Officer, Lilienthal, directed Parkmerced to recalculate its pass-through. The Hearing Officer

specifically directed landlord to exclude any amounts attributable to laundryroom consumption cost in calculating the pass-through to tenants to come up with a reasonable method by which to recalculate its PG&E cost. Landlord thereafter adopted a method, recalculated the pass-through and kept the same base year and comparison period. The decision was not appealed.

"3. In 1982, the Board amended its Rules and Regulations. Its amended Rule, Section 4.11, required that landlords use the calendar year of 1980 as the base year and the years following as comparison. This change occurred after landlord had implemented its methodology.

"4. In 1983, landlord noticed another PG&E pass-through using the same base period of June 1, 1979 to May 31, 1980 and a comparison period of June 1, 1982 to May 31, 1983. Tenants protested the pass-through, and hearings on this and other issues followed. The herein appeal was taken from the Hearing Officer's decision dated July 24, 1984.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"7. Using the landlord's current base year (June 1, 1979 to May 31, 1980), the PG&E costs incurred are $798,644.22. If the landlord were ordered to use the calendar year 1980 as its base year, pursuant to Rules and Regulations 4.11(b), its cost would be $1,111,488.06. If the landlord was required to use the higher base amount, he would have less of a pass-through."

The Rent Board then concluded "To allow an exception to Section 4.11 of the Rules and Regulations to allow this landlord to continue using the current comparison. This exception is based on a waiver of the Regulations under Rule 2.18."

In the original peremptory writ issued by the court in proceeding No. 837626, the Rent Board was commanded to enter findings which support "[a]llowing an exception to Section 4.11 of the Rules and Regulations allowing the landlord to continue using the current comparison periods employed for calculating P.G.&E. pass-throughs." In their petition for writ of mandate in this proceeding, the tenants alleged the Rent Board's amended decision is "invalid with respect to the utility pass throughs . . . in that the findings of fact do not support the Amended Decision on Appeal." In support of this argument, the tenants claimed in the trial court, and also claim on appeal, that the Rent Board's findings were inadequate to support its decision because the decision lacked findings that there was "good cause" for an exception or that such exception was "in the interest of

justice," and there had been no showing of "hardship" by Parkmerced, as required by rule 2.18 which governs waivers of the rules.

Contrary to the tenants' assertion, their argument was specifically rejected by the Supreme Court in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12], footnote 16, where the court rejected "the practice of setting forth findings solely in the language of the applicable legislation." The court required the agency "to draw legally relevant sub-conclusions supportive of its ultimate decision." (*Id.* at p. 516.) The court also disapproved of language in *Ames* v. *City of Pasadena* (1959) 167 Cal.App.2d 510, 516 [334 P.2d 653], that the agency need do nothing more "than find the ultimate facts prescribed by the ordinance . . . ." (*Topanga, supra,* at p. 517, fn. 16.)

■ A finding such as there is "good cause" or that an exemption is in the "interests of justice" is referred to as an ultimate fact or ultimate finding in many administrative decisions. (Cal. Administrative Hearing Practice (Cont. Ed. Bar 1984) § 4.33, pp. 238-239.) "The law has long distinguished between ultimate findings and basic findings. An ultimate finding is usually expressed in the language of a statutory standard—the rate is reasonable, the proposed action is in the public interest, the company has refused to bargain collectively. An ultimate finding is typically mixed with law or policy. 'The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact.' Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 491 (1937). '[S]uch an ultimate finding was not enough . . . in the absence of a basic finding to support it . . . .' United States v. Pierce Auto Lines 327 U.S. 515, 533 (1946). 'Basic findings' are somewhere between ultimate findings and a summary of each bit of evidence. A good formulation: 'The decisions require a commission in a quasi-judicial proceeding to make basic findings supported by evidence and ultimate findings which flow rationally from the basic findings.' [Citation.] 'Findings based on the evidence must embrace the basic facts which are needed to sustain the order.' Morgan v. United States, 298 U.S. 468, 480." (3 Davis, Administrative Law Treatise (2d ed. 1980) § 14:27, p. 124.)

In *Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 860 [171 Cal.Rptr. 619, 623 P.2d 180], our Supreme Court held that ultimate findings alone made in the wording of the statute to the effect that the action of the agency was "consistent with the purposes of the act" and "in the public interest" were insufficient to support the agency's conclusion.

■ The Rent Board found Parkmerced had followed the Lilienthal decision which was not appealed, had implemented in a timely manner the new methodology for determination of the pass-through based upon the

original base year and now, under rule 4.11, would lose $312,843.84 annually in perpetuity. The Board concluded the facts warranted the application of rule 2.18. We do not find the Board's conclusion insufficient merely because it refers to rule 2.18 but fails to utilize some general language found in the rule. To hold otherwise would truly exalt form over substance. An agency may make findings by incorporation by reference (*Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, 872 [206 P.2d 355]) and that is what the Rent Board did by its reference to rule 2.18.

Here, the Rent Board made the reference in its conclusion not in the findings. The findings are sufficient to inform us of the reasoning of the Rent Board. On appeal, the Rent Board states that one purpose of rule 4.11(b) was to benefit the Rent Board by providing a "consistent methodology for verifying disputed pass-throughs." Undoubtedly, in most instances this uniform formula for computing pass-throughs would have little effect on the amount recovered by the landlord. Here, however, the large number of rental units owned by Parkmerced creates a great disparity between the amounts to be recovered under the old and the new methods. The basic facts set forth in the amended decision are sufficient to show that there is good cause for waiver, that the waiver is in the interests of justice and that Parkmerced would suffer hardship without a waiver. We find the findings of the Board sufficient.

### DISPOSITION

The matter is reversed and remanded to the trial court with orders to vacate its order and judgment granting the peremptory writ of mandate remanding the matter to the Rent Board and to enter a judgment denying the petition for writ of mandate. The court is directed to discharge the peremptory writ and to issue a new peremptory writ commanding the Rent Board to reinstate its amended decision issued on November 6, 1985. Appellant is awarded its costs on appeal.

Kline, P. J., and Smith, J., concurred.